**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| JODI R. SPENCER<br>3930 Bowen Rd.<br>Canal Winchester, Ohio 43110, | : <br> : <br> : <br> : | CIVIL ACTION NO. |
| Plaintiff, | : <br> : <br> : | JUDGE |
| v. | : <br> : | MAGISTRATE JUDGE |
| OHIO OPERATING ENGINEERS<br>APPRENTICESHIP AND TRAINING<br>FUND<br>1184 Dublin Rd.<br>Columbus, OH, 43215, | : <br> : <br> : <br> : <br> : <br> : <br> : | **COMPLAINT**<br><br>**Jury Demand Endorsed Hereon** |
| Defendant. | : | |

**I.   Preliminary Statement**

1.  This action seeks economic, compensatory, and punitive damages; declaratory, injunctive and equitable relief; prejudgment and post-judgment interest; and attorneys' fees and costs for the violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.;* the Reconstruction Era Civil Rights Act, 42 U.S.C. §1981; and the Ohio Laws Against Discrimination, R.C. Ch. 4112, when Defendant Ohio Operating Engineers Apprenticeship and Training Fund ("Defendant" or "Fund"), motivated by Plaintiff Jodi Spencer's African-American race, discriminated against her by grading her more harshly than similarly-situated equal or less qualified Caucasian Pre-Apprenticeship Orientation Program ("PAO") participants in failing to award sufficient points for her to pass the course, become indentured, and gain admission to its training program.

**II.   Jurisdiction and Venue**

2. Plaintiff brings race discrimination claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.*, based on a timely-filed charge affidavit, which, despite naming International Union of Operating Engineers, Local No. 18 ("Local 18"), Defendant realized was aimed at it and responded to during the administrative process, and a Right-to-Sue Letter from the Equal Employment Opportunity Commission received less than 90 days ago, the Reconstruction Civil Rights Act, 42 U.S.C. §1981, and the Ohio Laws Against Discrimination, R.C. Ch. 4112.

3. This Court has jurisdiction by virtue of 28 U.S.C. §§ 1331 (federal question); 1343 (civil rights); and 1367 (supplemental jurisdiction).

4. Declaratory, injunctive, and equitable relief are sought pursuant to 28 U.S.C. §§ 2201; 2202, and the common law of the State of Ohio.

5. Compensatory and punitive damages may be awarded under Title VII; §1981; R.C. 4112.99; and the common law of the State of Ohio.

6. Costs and attorneys' fees may be awarded pursuant to the 42 U.S.C. § 1988; Fed. R. Civ. P. 54; and the common law of the State of Ohio.

7. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b) and S.D. Civ. R. 82.1 because Defendant has its headquarters at 1184 Dublin Road, Columbus, Ohio 43215, in Franklin County, Ohio, and the claims arose at its Logan Training Center located at 30410 Strawn Road, Logan, Ohio 43138.

**III.     Parties**

8. Plaintiff Jodi Spencer, an African-American female, was at all times relevant to this Complaint a participant in Defendant's April 2019 PAO class, and a member of Local 18.

9. Defendant Fund is a trust created by Local 18, the Ohio Contractors' Association, and the Ohio Building Chapter of the Associated General Contractors and registered in Ohio as an

apprenticeship training program; controls access for applicants to become an indentured apprentice in the construction equipment operator profession; held a 16-day PAO class that began on or about May 6, 2019, at its Logan Training Center, and, at all times material to this Complaint, regularly employed 15 or more full-time employees and/or is a "labor organization" under Title VII and the Ohio Laws Against Discrimination.

**IV.     Facts**

10.    Plaintiff Jodi Spencer ("Plaintiff" or "Ms. Spencer") is a 50-year old African-American female who graduated from the Ohio State University with a Bachelor of Science Degree in Agriculture Business and Horticulture.

11.    Plaintiff's job experience includes employment as a Horticulturist at the Franklin Park Conservatory in Columbus, Ohio for about two years; a teacher in the Columbus Public School District for approximately nine years; and work on a permit as a Skid Steer and Loader at Danbert, LLC in Plain City, Ohio.

12.    Ms. Spencer also worked as a Program Facilitator for the Girl Scouts of America, was a Community Safety Representative for AmeriCorps, and served as a volunteer for many non-profit organizations.

13.    While completing coursework as an Agricultural Business and Horticulture major at the Ohio State University, Plaintiff became interested in operating heavy equipment and machines.

14.    Before enrolling in the PAO class, Plaintiff had taken a six-week training program offered by Performance Training Solutions, LLC, at a cost of approximately $9,000.00 dollars.

15.    During the six-week training program, Plaintiff was not reprimanded or counseled in any way regarding safety violations, safety concerns, or failure to follow safety instructions.

16. Plaintiff successfully completed the training program with over 250 hours of seat time in the bulldozer, skid steer, loader, rough terrain forklift, backhoe, and scraper machines and equipment.

17. Plaintiff earned a National Center for Construction Education and Research ("NCCER") certification in April of 2017.

18. Earning NCCER certification made Plaintiff immediately eligible to work as a heavy machinery and equipment operator on a "permit" basis.

19. A "permit" allows an individual to work on jobs typically filled by union apprentices exclusively, with hiring and continued work subject to the control of a union, which for Plaintiff was Local 18.

20. The pay scale for individuals working on a permit basis is lower than it is for individuals who are apprentices.

21. In or around October of 2017, Plaintiff joined Local 18.

22. Plaintiff's union representative met with her when she first joined Local 18 in accordance with the procedure for new union members, and as a member she paid dues.

23. In or around October of 2017, Plaintiff was hired by Danbert, LLC ("Danbert") on a permit as a Skid Steer and Loader.

24. Danbert, LLC provides services for utility installation services, network duct and manhole systems, and excavation support systems, and completes special projects that focus on directional boring, vacuum excavations, and hourly equipment work.

25. Danbert's website indicates safety is a priority for the company and reads, "Danbert is very committed to the safety and wellbeing of every employee . . . we continually update our

safety equipment, and institute creative ways to train our employees on the importance of safety for them and the company."

26. During Plaintiff's employment with Danbert, she was not reprimanded or counseled in any way regarding safety violations, safety concerns, or failure to follow safety instructions, and had no issues related to safety.

27. Plaintiff left Danbert due to lack of work.

28. As a union member, Plaintiff paid into an International Union of Operating Engineer's Pension Fund and the Apprenticeship Fund, which allowed her to complete courses at the Apprenticeship Program's Logan Ohio training center upon meeting the required number of participant hours.

29. The Ohio Operating Engineers Apprenticeship & Training Program purports to take affirmative action to provide equal opportunity in apprenticeships and operate its Apprenticeship Program as required under Title 29 of the Code of Federal Regulations, Part 30, and Equal Employment Opportunity Regulations of the State of Ohio.

30. The Ohio Operating Engineers Union Apprenticeship and Training Program requires four years of apprenticeship training, which includes a minimum of 640 hours of classroom and related instruction, a minimum of 4,000 hours of employment, and passing written and machine performance tests.

31. Basic qualifications for selection into the Apprenticeship and Training Program are a high school diploma or GED, a valid driver's license, dependable transportation, eligibility to work in the United States, an interest in working outdoors in all types of weather, age eighteen years old by May 1 in the year of application, ability to read and do arithmetic well enough to progress in the classroom training and understand oral/written instruction, a current CDL

(Commercial Driver's License), or, if not, a current Class B CDIP (Commercial Driver's Instruction Permit) with air brakes endorsement, and passing a background check and drug test.

32. Plaintiff met or exceeded each of the basic qualifications for selection into the Apprenticeship and Training Program.

33. In addition to the basic requirements for selection into the Apprenticeship and Training Program, two tests are conducted.

34. The first "testing" awards potential points in eight categories: High School Credit or GED (50 points); PSI Visual Pursuit (30 points); Ramsay Speed of Marking (50 points); Reading Comprehension Test (40 points); Arithmetic Test (40 points); Bennett Mechanical Comprehension Test (68 points);  Minnesota Paper Form Board Test (64 points); and Veterans (10 points).

35. Plaintiff recalls scoring 90% or above on most exams and scoring in the 80's on at least one exam.

36. The second "testing" consists of an interview with a possible award of 50 points.

37. Candidates selected for an interview are comprised of applicants who accumulated the most qualifying points above 70% of the possible score during the first tests in the application process; three candidates are interviewed for each apprentice opening.

38. Selection for the 120-hour PAO is made from applicants who accumulated the most qualifying points during the first two application processes.

39. Plaintiff applied and was selected for the May 6, 2019 through May 23, 2019 PAO class held at the Apprenticeship Training Center in Logan, Ohio, which is a prerequisite for admission into the Ohio Operating Engineers Apprenticeship and Training Program.

6

40. Plaintiff was the only African-American female selected for the PAO class beginning on May 6, 2019.

41. The PAO is designed to introduce prospective apprentices to the Ohio Operating Engineers' work functions by providing classroom instruction and "in the seat" training on heavy equipment operations, safe work practices, and proper maintenance and repair of equipment.

42. Prior to the PAO course, Plaintiff was introduced to the Ohio Operating Engineers' work functions with more than 250 hours of "in the seat time" and training on safe work practices, proper maintenance, and repair of equipment acquired during her NCCER certification.

43. Plaintiff gained on-the-job experience when she operated heavy machinery on a permit basis as a Skid Steer and Loader for Danbert, LLC.

44. The PAO is a 16-day course that upon completion awards participants with the designation of "indentured" and enables them to enter the Ohio Operating Engineers Union Apprenticeship and Training Program.

45. Plaintiff met or exceeded the basic qualifications for selection into the Apprenticeship and Training Program and, unlike many PAO participants, if not most, she had prior job experience as a heavy equipment and machine operator.

46. Plaintiff resides in Columbus, Ohio which is an approximate 95-mile round-trip commute to the Logan Apprenticeship and Training Program Center.

47. PAO participants are evaluated in the categories of Attendance, Attitude, Initiative, Safety, Mechanical Ability, and Classroom Progress.

48. PAO participants are evaluated in each category daily and points are awarded based on a minimum number of "0"points, which means "Puts forth no effort whatsoever" or "Poor," up to a maximum number of points that means "Excellent" and varies by category.

49. The criteria for PAO performance categories is provided in the PAO "Instructor's Guide for Pre-Apprentice Evaluation".

50. During Plaintiff's attendance at the PAO, daily evaluation sheets were completed in pencil that provided the number of points awarded in each category for each participant.

51. Participants must achieve an average score of 70% for the 16-day course, equivalent to 1,120 out of a possible 1,600 points to pass the PAO, become indentured, and gain admission into the Ohio Operating Engineers Apprenticeship and Training Program.

52. Evaluators have a great deal of subjectivity and discretion in evaluating categories, as many, if not most, categories are subjective, and points can easily be manipulated to provide participants with a greater or lesser number of points.

53. Points in the category of Attendance/Punctuality range from "0 - Did not attend at all or was habitually late" to "20 - Attended completely/on time and ready for work".

54. Plaintiff had to leave class early on one occasion only but received zero points in the Attendance/Punctuality category for that day, even though she was not "habitually late" (or late at all), attended all classes, and did not miss any other time during the course.

55. In the subjective category of Attitude/Attentiveness, Plaintiff received 15 out of 20 possible points for every day of the 16-day course with no comments in the narrative portion of the evaluation.

56. The category of Attitude/Attentiveness is evaluated based on whether the pre-apprentice accepts direction in a courteous and receptive manner, is willing to perform designated tasks, and takes and follows directions that are given.

57. There were no comments on the daily evaluation narratives indicating that Plaintiff's attitude was problematic or that she was discourteous or not receptive to taking direction,

8

yet she always received the same number of points (15), and never received the full amount of points.

58. In another subjective category, Initiative, points may be awarded ranging from "0"- puts forth no effort whatsoever" to "15 – Excellent".

59. Plaintiff received daily scores in the category of Initiative ranging from a low of 3 points to a high of 10 points, but there was nothing in the written narratives regarding initiative, and she was not advised that initiative was problematic.

60. A total of 30 points may be awarded each day in the subjective category of Classroom Progress that measures whether the student participates in classroom exercises, excels in test or exams, and retains knowledge.

61. Plaintiff does not know the daily or cumulative scores she received in the category of Classroom Progress, but she was not advised of any problems in that area.

62. Upon completing the PAO course, Plaintiff was awarded a total of 1,027 points for an average of 64.2%, which is not a passing score.

63. Plaintiff was not indentured, and, as a result, could not enter the four-year Ohio Operating Engineers Apprentice and Training Program.

64. Defendant has indicated that safety concerns were the primary reason that Plaintiff did not pass the PAO course, but Plaintiff previously had no safety concerns or violations when she performed the job of a heavy machine operator for Danbert, LLC, has no points on her driving record, and did not create any more safety concerns than many other non-African-American PAO participants.

65. From her observation and the scoring system, Plaintiff believes that non-African-American PAO participants were treated and evaluated more leniently than she was.

66. As an example, the class was divided into teams that rotated through various stations throughout the course.

67. Teams were advised that they would spend two days in the Shop and Forklift station, which did not require driving large equipment and was considered safer than some of the other stations.

68. One of the all-Caucasian female teams spent three days at the Shop and Forklift station, with one participant receiving the assignment of waxing program coordinator Michael Cooper's truck, and she was subsequently indentured.

69. Caucasian course facilitators and other training center personnel routinely and jokingly recounted tales of injuries sustained because of accidents caused by Caucasian trainees who were later passed and became indentured.

70. After not passing the PAO course, Plaintiff filed a discrimination complaint with the Department of Job and Family Services ("JFS") Bureau of the Civil Rights Division.

71. The JFS Bureau of Civil Rights Division determined it did not have jurisdiction regarding Plaintiff's complaint because she was not part of the Ohio Operating Engineers Apprenticeship and Training Program.

72. Plaintiff timely filed a complaint of discrimination based on race with the Equal Employment Opportunity Commission ("EEOC").

73. While Plaintiff met and exceeded the qualifications required for participating in the PAO course, Defendant's EEOC Position Statement stated, "The Apprenticeship Fund admitted Ms. Spencer into its PAO training _solely_ because of its affirmative action commitment to recruit and admit minorities and women," placing emphasis on the word "solely".

74. Defendant added that "44 Caucasian males were denied admission into the class, while charging party was selected to participate".

75. Defendant submitted that Plaintiff's failure "to safely perform and pass the PAO also had the effect of denying a position in the Apprenticeship Program to an applicant who may have successfully completed PAO."

76. In that five-page EEOC Position Statement, five references were made to Plaintiff's selection for the PAO course causing displacement of Caucasian candidates who were impliedly better qualified.

77. From Plaintiff's observation, conversations, overheard discussions, and experience, several Caucasian candidates who were equal to or less qualified than she was passed the PAO.

78. As a direct and proximate result of Defendant's discriminatory failure to award Plaintiff the sufficient number of points earned and required to pass the PAO and become indentured, she suffered and continues to suffer economic damages in the form of lost salary and fringe benefits, even though she has made reasonably diligent efforts to secure employment that is comparable to an indentured Ohio Operating Engineer Apprentice.

79. As a direct and proximate result of Defendant's discriminatory failure to award Plaintiff the sufficient number of points earned and required to pass the PAO and become indentured, she suffered and continues to suffer from emotional distress, frustration, and humiliation.

80. By failing to award Plaintiff the sufficient number of points earned and required to pass the PAO course and become indentured, while Defendant passed and indentured equal or less qualified similarly-situated non-African-American participants, Defendant acted with conscious

disregard toward Plaintiff's right to remain free from discrimination even though its conduct had a great probability of causing her economic and emotional hardship, and did cause such harm.

V.     **Cause of Action**

    A.     **Count I: Violation of Title VII, 42 U.S.C. §2000e**

81.     Paragraphs 1 through 80 are incorporated herein as if fully set forth.

82.     Defendant discriminated against Plaintiff based on race when it manipulated her scores and failed to pass and indenture her upon completion of the PAO, which barred her from admission to the Ohio Operating Engineers Union Apprenticeship and Training Program, while it passed and indentured equal or less qualified similarly-situated non-African American PAO participants, thereby violating Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e.

    B.     **Count II: Violation of 42 U.S.C. §1981**

83.     Paragraphs 1 through 82 are incorporated herein as if fully set forth.

84.     Defendant discriminated against Plaintiff based on race when it manipulated her scores and failed to pass and indenture her upon completion of the PAO, which barred her from admission to the Ohio Operating Engineers Union Apprenticeship and Training Program, while it passed and indentured equal or less qualified similarly-situated non-African American PAO participants, thereby violating the Reconstruction Era Civil Rights Act, 42 U.S.C. § 1981.

    C.     **Count III: Violation of R.C. Ch. 4112**

85.     Paragraphs 1 through 84 are incorporated herein as if fully set forth.

86.     Defendant discriminated against Plaintiff based on race when it manipulated her scores and failed to pass and indenture her upon completion of the PAO, which barred her from admission to the Ohio Operating Engineers Union Apprenticeship and Training Program, while it

passed and indentured equal or less qualified similarly-situated non-African American PAO participants, thereby violating the Ohio Laws Against Discrimination, R.C. Ch. 4112.

## VI. Prayer for Relief

WHEREFORE, Ms. Spencer is entitled to and prays for the following relief:

a. a declaration that the Fund violated Title VII of 42 U.S.C. §2000e, 42 U.S.C. § 1981, and/or the Ohio Laws Against Discrimination, R.C. 4112;

b. equitable relief of indentured status;

c. wages, salary, employment benefits, and other compensation denied or lost to her, exceeding $75,000, because of Defendant's violations;

d. compensatory and punitive damages in an amount exceeding $75,000;

e. prejudgment and post-judgment interest:

f. costs and attorneys' fees; and

g. such other relief as the Court deems fair and equitable.

Respectfully submitted,
By: */s/ Helen M. Robinson*
Helen M. Robinson (0097070)
(*hrobinson@marshallforman.com*)
John S. Marshall (0015160)
(*jmarshall@marshallforman.com*)
Edward R. Forman (0076651)
(*eforman@marshallforman.com*)
Samuel M. Schlein (0092194)
(*sschlein@marshallforman.com*)
MARSHALL AND FORMAN LLC
250 Civic Center Dr., Suite 480
Columbus, Ohio 43215-5296
(614) 463-9790
Fax (614) 463-9780

**OF COUNSEL:**
Louis A. Jacobs (002101)
(*LAJOhio@aol.com*)
177 19th St., Apt. 9C
Oakland, CA 94612
(614) 203-1255
Fax (614) 463-9780

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial by a jury of eight (8) persons.

By: */s/ Helen M. Robinson*
Helen M. Robinson (0097070)